The document below is hereby signed.

Signed: November 16, 2009.



```
_____
S. Martin Teel, Jr.
United States Bankruptcy Judge
```

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MELODY H. FENNEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 09-10021 |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | **Not for Publication in** |
| Defendant. | ) | **West's Bankruptcy Reporter** |

<u>MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS</u>

This addresses the defendant's motion to dismiss this adversary proceeding.  For the reasons set forth below, the defendant's motion will be DENIED.

I

On May 14, 2009, defendant Yelverton commenced his case in this court under chapter 11 of the Bankruptcy Code (11 U.S.C.). Thereafter, the plaintiff, Fennel, commenced this adversary

proceeding seeking to have the court declare two loans she made to Yelverton non-dischargable under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6).  The facts as alleged in Fennel's complaint are as follows.

On or about May 9, 2008, Yelverton called Fennel and requested a meeting with her later that day.  At that meeting, Yelverton told her that his wife had left him a few days prior, taking with her $400,000 from his bank account.  Yelverton then represented to Fennel that this resulted in a cash flow problem for him and requested a loan for $50,000, to be repaid no later than July 15, 2008.  At the time of Yelverton's request, Fennel had little knowledge of his financial condition other than having read, upon his request, at Yelverton's law firms site that he was an established Washington, D.C. attorney and the managing principal of his law firm, which maintained an international subsidiary to assist clients overseas.  Based on these representations, Fennel extended the loan to Yelverton, who executed a promissory note.

Several weeks later, Yelverton contacted Fennel again and requested a second loan in the amount of $5,000, representing that he was still experiencing cash flow difficulties and that he would repay the $5,000 no later than July 15, 2008.  Fennel again extended the requested loan to Yelverton, who executed a second promissory note, payment upon demand.  Yelverton defaulted under

2

both notes, and the entire amount remains outstanding with interest accruing.

Finally, in her complaint Fennel alleges that Yelverton's representations, upon which she relied, were largely false: Yelverton's wife had not withdrawn $400,000 from his bank account several days before the first loan request, Yelverton knew he had no ability to repay Fennel by July 15, 2008, and his law firm had no international subsidiary.

II

The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003). In deciding a motion to dismiss, although the court "must construe the allegations and facts in the complaint in the light most favorable to the plaintiff . . . ," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002), the complaint must nevertheless plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint . . . . [nor must it] accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

3

In deciding a motion to dismiss, "the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt*, 226 F. Supp. 2d at 196.

III

Yelverton sets out five bases for dismissal. I will address each in turn.

A.

Yelverton first bases his motion to dismiss on the doctrine of res judicata. Specifically, Yelverton argues that Fennel's non-dischargeability complaint is barred because she previously filed a complaint in the D.C. Superior Court seeking to collect payment on the two loans and in that proceeding did not make any allegations of fraud.

Res judicata, or claim preclusion, "prevents parties from relitigating issues they raised or could have raised in a prior action on the same claim." *NextWave Personal Comm'ns Inc. v. FCC*, 254 F.3d 130, 143 (D.C. Cir. 2001). "The three elements of res judicata are: (i) a final judgment on the merits in the first action; (ii) the present claim is the same as a claim that was raised or that might have been raised in the first proceeding; and (iii) the party against whom res judicata is asserted was a

party or in privity with a party in the previous case." *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 102-03 (D.D.C. 2002) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Because Fennel's non-dischargeability complaint could not have been brought in D.C. Superior Court, Yelverton's first basis for dismissal fails.

United States Code Title 28, Section 1334(a), vests exclusive jurisdiction of all bankruptcy cases in the federal district courts. Section 1334(b) vests original, but not exclusive, jurisdiction of all civil matters arising under title 11 in the federal district court. By local rule, the District Court for the District of Columbia has referred all cases arising under title 11 to this bankruptcy court.

Non-dischargeability complaints are, by their nature, claims that arise under the Bankruptcy Code: they exist solely by virtue of the Code and operate within the limited scope of the rights provided by it. Because the D.C. District Court has not referred these matters to the D.C. Superior Court, that court lacks jurisdiction to hear any complaint of non-dischargeability under the Bankruptcy Code. Because Fennel could not have brought her non-dischargeability claim under § 523 in the D.C. Superior Court, her claim is not barred by res judicata and Yelverton's motion to dismiss on this basis fails.

B.

Yelverton's next argues that the court should dismiss

Fennel's § 523(a)(2)(A) claim because that section excepts from its reach statements concerning the debtor's financial condition.

Section 523(a)(2)(A) excepts from discharge any "extension of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." A statement of a debtor's financial condition "has been interpreted narrowly to refer to representations specifically concerning the debtor's financial worth or condition," *In re Tillman*, 197 B.R. 165, 167 n.1 (Bankr. D.D.C. 1996) (citing *Field v. Mans*, 516 U.S. 59, 74 (1995)), or more specifically, statements concerning the debtor's ability to pay.

Although, to be sure, some of the false representations alleged by Fennel are statements respecting Yelverton's financial condition, her complaint is not limited to just these. Fennel also alleges that Yelverton's statement that his wife had left him just days prior to their May 9, 2008, meeting, taking with her $400,000 from his bank account, induced her to lend him the money on such an expedited basis. Absent this fact, Fennel argues, she would have been unwilling to make the loans to Yelverton without a more complete investigation of his financial situation. Because Yelverton's purported urgency does not speak to his ability to pay, Fennel has alleged a misrepresentation that would entitle her to relief under § 523(a)(2)(A).

Consequently, Yelverton's second basis for dismissal fails.

In addition, when Yelverton falsely represented that he would repay the loan by July 15, 2008, when he had no ability to repay. Yelverton implicitly represented an intention to repay, when he had no ability to repay, and it may be inferred that his false representation that he intended to repay by July 15, 2008, was made with an intent to deceive. *See, e.g.*, *Citibank (South Dakota), N.A. v. Eashi (In re Eashi)*, 87 F.3d 1082 (9th Cir. 1999); *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. B.A.P. 1998) ("An implied representation of intent to repay will be fraudulent if the credit card issuer demonstrates that at the time the debtor used a credit card he or she had no intent to repay the debt incurred."); *Mercantile Bank v. Hoyle (In re Hoyle)*, 183 B.R. 635, 638 (Bankr. D. Kan. 1995)(stating that the "purchase of goods on credit by a debtor who does not intend to repay . . . constitutes a false representation" within the meaning of 11 U.S.C. § 523(a)(2)(A)) (citation omitted); *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 507 (Bankr. N.D .Ill. 2002) (finding that a debtor who purchased a motorcycle on credit for her boyfriend and never intended to make payments on the loan misrepresented her role in the transaction to the lender, and that such misrepresentations constituted false pretenses under 11 U.S.C. § 523(a)(2)(A)).

C.

Yelverton next argues that dismissal is proper because Fennel has failed to allege with specificity the written statements made by him to make the debt non-dischargeable under § 523(a)(2)(B).

Section 523(a)(2)(B) excepts from discharge extensions of credit to the extent obtained by (1) use of a written statement; (2) that is materially false; (3) about the debtor's financial condition; (4) on which the creditor reasonably relied; and (5) that the debtor made or published with the intent to deceive. Moreoever, Federal Rule of Bankruptcy Procedure 7009 requires that a party alleging fraud state the circumstances giving rise to the fraud with particularity.  Here, the written statement that Fennel points to is Yelverton's law firm's website, and its false statements that the law firm had an international subsidiary.  That is a sufficient identification of an allegedly false written statement.  And if it is a statement regarding financial condition, the § 523(a)(2)(B) claim must survive the motion to dismiss.  If it is not a statement of financial condition, then it is actionable under the less stringent standards of § 523(a)(2)(A).  At this junction, I need not decide whether the website's false statement fits under § 523(a)(2)(A) or instead § 523(a)(2)(B).

D.

Yelverton's fourth argument is that dismissal is proper because Fennel failed to disclose to the court that Yelverton, through his law firm, worked with Fennel to obtain a consulting contract for her with the Republic of Nigeria.  Even assuming for the sake of the debtor's motion that this were true, it does not provide a basis for dismissing Fenel's complaint.  None of the provisions on which Fennel relies limits their use when the debtor might have a potential right of setoff.  If it is the debtor's intent to say that his assisting Fennel in procuring a consulting contract had the effect of satisfying his debt, that claim may be a defense to liability for the debt (if Fennel's Superior Court judgment does not bar the defense as a matter of res judicata), but Fennel had no obligation to plead the potential existence of the defense

E.

Yelverton's final argument for dismissal is that Fennel has failed to allege that his actions constitute "bad faith," "immorality," or "moral turpitude."  "For a debt to be nondischargeable under section 523(a)(2), the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law is insufficient."  *In re Mones*, 169 B.R. 246, 254 (Bankr. D.D.C. 1994).  In her complaint, Fennel alleges that the statements by

Yelverton were "intended to deceive."  This is sufficient as a matter of law to meet the requirement of § 523(a)(2) that the debtor's conduct involve moral turpitude or intentional wrong.

Regarding Fennel's § 523(a)(6) claim, nothing in that provision requires the plaintiff to allege moral turpitude. Instead, the plaintiff must allege that the injury was "willful and malicious," and Fennel alleges precisely that by alleging that Yelverton's conduct was "willful and malicious and was undertaken with the intent to defraud Plaintiff."[1]  For these reasons, Yelverton's final basis for dismissal also fails.

CONCLUSION

Pursuant to the foregoing, it is

ORDERED that the defendant's motion to dismiss is denied.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.

---

[1]  The parties have not addressed whether § 523(a)(6) applies to a debt for property obtained by fraud even though § 523(a)(2) specifically deals with such debts.  I will not address that issue now because litigation will be necessary to address at a minimum the § 523(a)(2) claim.